**CONKLIN SERVICE STATION and Franklin Casualty Company, Petitioners,**

v.

**I. C. BROWN and Oklahoma State Industrial Commission, Respondents.**

No. 36399.

Supreme Court of Oklahoma.

March 29, 1955.

Rucker, Tabor & Cox, Robert L. Shepherd, Tulsa, for petitioners.

Conyers & Conyers, Tulsa, Mac Q. Williamson, Atty. Gen., for respondents.

WILLIAMS, Vice Chief Justice.

This is a proceeding by Conklin Service Station and its insurance carrier, Franklin Casualty Company, to review an award of the State Industrial Commission awarding compensation to respondent, I. C. Brown.

Respondent in his claim for compensation stated that on the 31st day of October, 1951, while in the employ of Conklin Service Station he sustained an accidental injury consisting of an injury to his head; that the injury was caused by an automobile (hydraulic) lift which dropped and struck him on the left side of his head; that the extent of disability sustained as a result of his injury was at that time unknown.

The trial commissioner to whom the case was assigned at the close of the evidence found that respondent on the 31st day of October, 1951, while in the employ of Conklin Service Station sustained an accidental injury to his head; that as a result of such injury he sustained a 15 per cent permanent partial disability to his body as a whole for which he was entitled to compensation in the sum of $1,875 and entered an award in favor of respondent accordingly which was sustained on appeal to the Commission en banc.

Petitioners bring the case here to review this award. Their main contention is that there is no evidence to sustain the finding of the commission that respondent's disability was wholly caused by the alleged accidental injury. Although there is controversy as to the extent of respondent's injury, if any, it is not disputed that he had an accident at the time and in the manner stated in his complaint. The only question presented by this assignment is whether all the disability respondent now has was caused by the claimed accidental injury.

This question presents one of science and must necessarily be determined by the testimony of skilled and professional persons. E. G. Nicholas Const. Co. v. State Industrial Commission, 207 Okl. 428, 250 P.2d 221. In determining this question it is therefore unnecessary to enter into a discussion of the evidence other than the medical evidence.

Two physicians testified in the case. Dr. S. who was offered as a witness on behalf of respondent testified he first saw and examined him in June 1952 at the Springer Clinic and several times thereafter at his office. He obtained a history of respondent having sustained an injury on October 31, 1951, when an automobile lift dropped and struck him on the head. On these occasions respondent complained of headache and severe aching in the left side of his head. He also complained of partial loss of memory and ambition which made it difficult for him to work. The doctor examined respondent on three different occasions and the following positive facts have been found: This man had a slight dilatation of the left pupil, a slight proctosis or bulging out of the left eye and a ridge along the left temporal region in the distribution of the left temporal artery. He stated that while he was lifting a car, the car tended to fall, he had a squeezing injury to his head. That the problem essentially was that he felt that this man had a type of squeeze injury to his head. That the patient during this period of time, approximately two years, had continued to work and during this period of time that there had been headache present and some difficulty of his memory. That he felt that respondent did have some disability based on encephalopathy, post-traumatic, and there were changes noted in the electro-encephalogram which was moderately abnormal and would be compatible with a head injury with slight damage to the brain. That he felt finally as a basis for his check-up and follow-up over a period of time that respondent had a fifteen per cent partial disability as a result of his head injury complained of.

The doctor in addition to the above facts after testifying that prior to the time respondent sustained his injury he was a partially arrested hydrocephalus, further testified:

"Q. What is the hydrocephalus? A. A hydrocephalic is a person that has had either poor absorption or too great a volume of spinal fluid during the early stages of his illness,—I mean early stages of his life and probably somewhere around three to six months this imbalance of fluid in the cranial cavity became arrested and the patient's spinal fluid circulation became normal. This produced a rather unusual shape to the head due to the excessive amount of fluid within the cranial vault.

"Q. Doctor, the general shape of Mr. Brown's head is not bilaterally symmetrical, is it? A. That is approximately correct.

"Q. It is not bilaterally symmetrical? A. Yes, that is right.

"Q. Do you attribute that to the condition of his early youth, that disease? A. Well, yes, the disease. The shape of his head we don't know whether or not the irregularity in the shape of the head was produced prior to a certain age of life, probably the large block of the irregularity was there before.

"Q. Doctor, then you having not seen Mr. Brown prior to his injury are not able to ascertain whether or not this ridge on the left temporal was the result of this accident or whether it was that condition which was formed during the early period of his life? A. Well, I would put it this way, as stated previously. I think it is more likely that this ridge is due to periosteal reaction due to trauma rather than to something present previously although I can't be sure which it is."

The doctor, however, also testified that if it could be established that respondent prior to the time he allegedly sustained his injury had central nervous system syphilis or that he had headaches previously he would change his opinion as to the cause of disability. He further testified that he had no record that respondent had syphilis; that in modern days it is very rare to see patients with syphilis of the central nervous system; that many people have syphilis without any involvement of the central nervous system; that a spinal puncture and positive Wassermann test would be required to demonstrate that respondent had central nervous system syphilis.

Dr. T who was offered as a witness in behalf of petitioners testified that in his opinion no part of respondent's disability was caused by the alleged injury but was due to some disease which was congenital or contracted in early childhood; that respondent had a small spurring about each hip joint; that there was something else there that was not bony; that this was in the soft tissue on each side and in each hip; that would be in each gluteal region; that there were multiple linear streaks or lines; that this was an opaque substance which in every picture he had ever seen like that had always been of a Bismuth type; that Bismuth is used in the treatment of syphilis; that respondent had neurological findings and had what is considered sufficient evidence of Bismuth deposits in both hips, meaning that until proven otherwise, he would be suspected of having had and been treated for syphilis; that then that lined the situation up perfectly to suspect that respondent might be a victim of central nervous system involvement.

The evidence does not definitely establish that respondent has ever been treated for syphilis nor does it tend definitely to show that his disability is due to that disease. It merely raises a possibility or suspicion that at some time he might have been treated for syphilis but falls far short of establishing that his disability is due to prevalence of such disease in respondent's central nervous system.

The Commission found that as a result of his accidental injury respondent sustained a 15 per cent permanent partial disability to his body as a whole. There is ample evidence to sustain such finding. Petitioners argue that Dr. S. upon whose testimony the Commission relied in arriving at such finding attributed 5 per cent disability to headache, 5 per cent to loss of memory and personality changes, and 5 per cent to changes found in the electro-encephalogram, but that he admitted that he didn't know which produced the changes in the electro-encephalogram, whether it was from the injury or the disease. On cross-examination, he testified that he didn't know whether the changes in the electro-encephalogram were the result of the injury or from respondent's disease. However, on redirect examination, he testified as follows:

"Q. Doctor, from your examination of this patient if the case history, as you know it, is correct the diagnosis that you just gave previously to be that this man had fifteen per cent disability? A. Yes. The problem here is based on the fact that as far as we know from the history the man had no diffi-

culty prior to the injury which he allegedly stated took place in October, '51. That being the situation, he did not have difficulty prior to that time, the present symptomatology according to our history and findings, suggest that the difficulty arose on the 11th day of June, 1952, therefore I feel that if all the facts stated previously are correct that his disability is secondary to head injury. However, as I stated previously if it can be shown that this man did have central nervous system syphilis or that he had headaches previously, then I would have to change the story.

"Q. Now, Doctor, on your examination, and you have examined this man several times and he has been your patient for some months, in your opinion, is there any indication whatsoever this man being troubled with anything over of syphilis? A. Well, again I don't have the laboratory data of that to answer that.

"Q. I mean from your observation and examination? A. I have not felt that this man has central nervous system syphilis."

This provided a reasonable basis for the Commissioner's finding.

On cross-examination of respondent counsel for petitioners propounded the following question: Now, Mr. Brown, you have been treated over a year by the County Health Department for venereal disease, have you not? Counsel for respondent objected but stated that if it could be shown that it was competent it was all right. The trial commissioner sustained the objection. This ruling is assigned as error.

Counsel for petitioners state that the theory of their defense was that respondent's condition and complaint with reference thereto were the result of syphilis and that such ruling of the trial commissioner deprived them of the right to fully develop such defense and they have been materially prejudiced thereby. We do not agree. Petitioners were given every opportunity by the Commission to establish such defense and they attempted to do so by the physician who testified in their behalf. Their testimony is as above pointed out. It does not definitely establish that respondent's present condition is due to syphilis. No other medical testimony was offered by petitioners nor was any request made for further medical examination of respondent.

It does not appear from the record upon what ground the objection was sustained. Counsel for respondent in the brief state that it did not constitute proper cross-examination and the objection was properly sustained for this reason. Assuming, however, without deciding that the question asked constituted proper cross-examination and the trial commissioner had required respondent to answer and he had answered in the affirmative this additional evidence in our opinion would not have changed the result. Petitioners defended on the theory that respondent's condition was caused by syphilis. The burden was on them to establish such defense by expert testimony. This they attempted to do by the physicians testifying in the case but failed in their attempt. If the additional evidence that respondent in the past had been treated for syphilis had been admitted it would still be insufficient to establish such defense for the reason it would not have been expert testimony and for the further reason that for one to have syphilis of the blood stream does not mean he has syphilis of the central nervous system. We conclude that no prejudicial error was committed in sustaining the objection.

The contention of petitioners that the ruling of the Commission deprived them of a full and fair hearing is not sustained by the record.

Award sustained.

JOHNSON, C. J., and WELCH, CORN, DAVISON, HALLEY, BLACKBIRD and JACKSON, JJ., concur.